IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EMAD HASAN,                  )
                             )
        Plaintiff,            )
                             )
   v.                         )   No. 10 C 5534
                             )
COTTRELL, INC.,               )
                             )
        Defendant.            )

MEMORANDUM OPINION AND ORDER

This is a products liability suit in which plaintiff, who was working as the driver of a "car hauler" manufactured by defendant, was injured when he fell from the top of a rig he claims was defectively designed. Plaintiff asserts strict liability, negligence, and contract claims. Defendant moved for summary judgment, or, in the alternative, to bar plaintiff's expert from offering opinions to support plaintiff's theory of liability.[1]

---

[1] Defendant's motion does not specify which of plaintiff's multi-count complaint it targets in its motion. Counts I and II of the complaint are labeled "Strict Liability" and "Negligence," respectively, while Counts III and IV are labeled "Breach of Implied Warranty" and "Wilful and Wanton Conduct." Although defendant's arguments are directed to plaintiff's tort claims, the contractual claim in Count III depends, on its face, on plaintiff's ability to establish the existence of a design defect. Accordingly, although the theories of liability in these claims is distinct, the viability of all of plaintiff's claims turns on this issue.

Before me is Magistrate Judge Rowland's Report and Recommendations, which recommends denying defendant's motion in full. Defendant timely objected to the Report and Recommendations, which I review *de novo* pursuant to 28 U.S.C. § 636. While I conclude that certain of defendant's objections have merit, I accept Judge Rowland's ultimate recommendation for the reasons explained below.

I.

The events culminating in plaintiff's injury are straightforward: While lying down in the course of securing an SUV to the "number one" deck position of the car hauler, i.e., the position above the rig's sleeper cab, plaintiff fell to the ground and suffered a serious injury to his foot. Plaintiff claims his fall was the direct result of the car hauler's defective design. As evidence of defect, plaintiff proffers the report of his expert, Dr. Gerald Micklow, a professor of engineering with substantial expertise in the areas of mechanical and aerospace engineering, and a frequent provider of expert reports and testimony on behalf of plaintiffs alleging defects in car haulers.

In this case, Dr. Micklow has provided a report setting forth eleven, individually numbered opinions.[2] The substance of

---

[2] The report is captioned "Preliminary Report Regarding Injuries Related to Slips and Falls When Loading/Unloading Vehicles on

these opinions overlaps and can be organized into three general categories:

First, Dr. Micklow opines that car carriers are unreasonably dangerous unless they include adequate fall protection mechanisms such as handholds, "catwalks," friction increasing material, and/or flexible safety netting. He further opines that the car carrier from which plaintiff fell did not have these features. Micklow Rep., Pl.'s Resp. to Obj., Exh. B at ¶¶ 1, 2, 3, 6, 7.[3] [DN 131-2].

Second, Dr. Micklow opines that the risk of injury to workers on car haulers has long been well known in the industry and by defendant specifically, and that injuries such as plaintiff's are foreseeable in the absence of fall protection mechanisms such as those discussed in his report. Dr. Micklow further opines that plaintiff's injury was directly caused by the absence of such features from defendant's car hauler. *Id*. at ¶¶ 3, 4, 6, 8, 9, 10, 11.

Third, Dr. Micklow opines that feasible alternative designs exist and have existed "for some time." Specifically, he states that:

---

Car Carriers." Although described in its title as "preliminary," Dr. Micklow has not, so far as the record reveals, made any changes to his report.
[3] The paragraph numbers here refer to the numbered list set off by the text, "My opinions are as follows:". The pages of Dr. Micklow's report are not numbered.

3

> Examples of such feasible alternative designs are depicted in the photos of the European trailers obtained by Linda Weseman, the photos of European trailers, the photos of the Delavan trailer handrails, photos of the Cottrell upper deck handrails and the designs created by myself, Linda Weseman, Dr. Nigel Ellis and Sure Footing Safety Systems. Linda Weseman is a person well known to me and with whom I have conferred about this issue. She installed handrails on the specific trailer. I have reviewed the patent of Dr. Nigel Ellis and his drawings as well as his correspondence to Cottrell. Such designs by myself, Linda Weseman and Dr. Ellis are very much feasible as the same design concepts have been used on trailers for years around the world in other countries. They satisfy the Federal Size Regulations for Commercial Vehicles related to width restrictions. They are used in Europe with narrower width limits.

*Id*. at ¶¶ 5 (quoted text), 8.

Defendant's lead argument in its motion before Judge Rowland was that it is entitled to summary judgment, even if Dr. Micklow's testimony is considered, because plaintiff relies on the "risk-utility" method of proof to establish the car hauler's design defect, yet Dr. Micklow's opinion fails to address certain of the factors relevant to the risk-utility analysis under Illinois law. Accordingly, defendant insisted, Dr. Micklow's report and testimony do not amount to *prima facie* evidence that the car carrier was defective. *See Mikoljczyk v. Ford Motor Co.*, 901 N.E. 2d 329, 352 (Ill. 2008) (explaining that "risk-utility" is a method of establishing the "unreasonably dangerous" element of the design defect theory);

*Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 908 (N.D. Ill. 2010) (same).

Defendant's second argument in its motion was that Dr. Micklow's report is inadmissible under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because: a) Dr. Micklow is not qualified to offer the opinions expressed in his report, and b) his opinions are not reliable or relevant. On the first point, defendant argued that Dr. Micklow's expertise in aerospace engineering does not qualify him as an expert in "fall protection" or the "ergonomics associated with such fall protection." On the second, defendant assailed Dr. Micklow's opinions respecting feasible alternative designs and causation, insisting that they lacked support in the record and failed to consider either the cost of his proposed alternatives or whether those alternatives would have prevented plaintiff's injury in this case.

Judge Rowland recommended denying defendant's motion in its entirety. Taking defendant's arguments in reverse order, she began by analyzing Dr. Micklow's credentials and found that he was qualified to offer the opinions in his report, thus denying defendant's request to bar his testimony. Judge Rowland then turned to defendant's summary judgment arguments and concluded that Dr. Micklow's opinions about feasible design alternatives

5

presented sufficient evidence under the risk-utility framework to entitle plaintiff to a trial on his design defect theory.

Defendant objects that Judge Rowland conducted a flawed *Daubert* analysis by examining only one prong of the required three-prong inquiry, failing to address either the reliability or the relevance of Dr. Micklow's proposed testimony. Defendant then revisits the arguments it previously made on these points, asserting that Dr. Micklow's report is unreliable and irrelevant because he did not test the alternative designs he identified in his report; because he had never seen two of his proposed alternatives—the "Sure Footing" design and the "Rail Grabber" design—in practice and did not know if they were commercially available or what they cost; and because he did not review plaintiff's deposition testimony or examine the car hauler from which plaintiff fell before preparing his report in this case. These flaws, defendant argues, render his opinions—particularly those relating to feasible alternative designs—hopelessly unreliable and inadmissible under *Jablonski v. Ford*. 955 N.E. 2d 1138 (Ill. 2011).

Defendant also argues that Judge Rowland failed to address its further argument that Dr. Micklow should be barred from testifying based on discovery violations, namely, his refusal to answer certain questions during his deposition and his failure

produce certain information prior to that deposition, as required by a court order.

II.

At the outset, I agree with Judge Rowland that Dr. Micklow is qualified to offer the opinions he articulates in his report. Dr. Micklow's expertise as a mechanical and aerospace engineer is not in dispute, and nothing in the record suggests that in the present context, "fall protection design" or the "ergonomics associated with such fall protection" require such a highly specialized analysis that an engineer of Dr. Micklow's training and background is not qualified to answer the questions he may be asked on those issues. "The notion that *Daubert*…requires particular credentials for an expert witness is radically unsound…. Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). *See also Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("[o]rdinarily, courts impose no requirement that an expert be a specialist in a given field, although there may be a requirement that he or she be of a certain profession, such as a doctor.") These principles are wholly consistent with defendant's cited authority, *Ty, Inc. v. Pub. Int'l, Ltd.*, No 99 C 5565, 2004 WL 2359250, at *5 (N.D. Ill. Oct. 19, 2004) (Zagel, J.).

Defendant's reliance on *Ty* is, indeed, somewhat perplexing. There, the court *denied* the defendant's motion to exclude the plaintiff's expert—a publisher with extensive experience "in the general field of non-fiction publishing" whose testimony was proffered to "assist the jury in determining the profits driven by" the defendant's alleged use of infringing photographs. *Id.* Having previously determined that the "specific expertise required" on this issue was "demonstrated experience in valuation," the court acknowledged that the expert's skills and background were not "ideal," but nevertheless concluded that his general qualifications provided a "sufficient foundation" for his proposed testimony. *Id*. at 5-6. So too, in this case, Dr. Micklow's general engineering expertise renders him qualified to offer testimony on the specific issue of whether the car hauler at issue was defectively designed.

It is true, nevertheless, that a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). In my role as "gatekeeper," I must determine whether the proponent of the expert has established that the proposed expert testimony is "based on sufficient facts or data," whether it is "the product of

reliable principles and methods," and whether those principles and methods have been "reliably applied…to the facts of the case." Fed. R. Evid. 702. That is, I must decide "whether he consulted reliable sources and provided reasoned explanations connecting the source material to his conclusions." *Lees v. Carthage College*, 714 F.3d 516, 524 n. 3 (7th Cir. 2013). I agree with defendant that Judge Rowland's report and recommendations overlooked this portion of the analysis.

District courts have "latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). Moreover, the test for reliability is "flexible":

> A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy. If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."

*Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Daubert*, 509 U.S. at 596).

Defendant insists that Dr. Micklow's opinions about feasible alternative designs are unreliable because he did not test the designs he identified, had never seen them in person, and had done no measurements to determine whether the

9

alternatives were compatible with the car hauler at issue. But these are precisely the type of shortcomings that can be explored on cross-examination. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586-87 ("the factual underpinnings of expert testimony may be subject to counter-attack"); *see also Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001) (the "factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination").

Defendant makes much of the fact that Dr. Micklow did not test any of his proposed design alternatives. While it is true that testing is one factor that may bolster the reliability of an expert's opinion, testing is not required in every case. Indeed, as one court in this district has observed, "[t]o require physical testing of an expert's opinions before the expert is permitted to testify would mean the elimination of product liability suits by ordinary non-corporate citizens." *Traharne v. Wayne/Scott Fetzer Co.*, 156 F. Supp. 2d 697, 713 (N.D. Ill. 2001) (Rosemond, MJ), *aff'd* 156 F. Supp. 2d 717 (N.D. Ill. 2001). That the Seventh Circuit concluded, in *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887 (7th Cir. 2011), and *Dhillon v. Crown Controls Corp.*, 269 F.3d 865 (7th Cir. 2001), that on the facts of those cases, the district court had not

abused its discretion in excluding untested expert theories does not mean that testing is required in all circumstances. Indeed, the court in *Bielskis* found it a "close question," reiterating that "the district court's admissibility determination is not intended to supplant the adversarial process," and that generally, even "shaky expert testimony may be admissible, subject to attack on cross-examination." 663 F.3d at 894 (quotation marks and citation omitted). In this case, neither the challenged design nor the proposed alternatives incorporating various additional safety features are complex. I am satisfied that even without testing to demonstrate how specific alternatives would have prevented plaintiff's accident, Dr. Micklow's understanding of how certain alternatives have been used in practice provides a minimally sufficient foundation for his testimony.

Similarly, the fact that Dr. Micklow has not seen the Sure Footing or Rail Grabber designs in person does not necessarily render his opinion that they were feasible alternatives unreliable. An expert "is not always required to personally perceive the subject of his analysis," *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776 (7th Cir. 2000). In *NutraSweet*, the court rejected the argument that an expert's opinion was unreliable on the ground that it was based on data he obtained from others. *Id*. at 789-90. So, too, in this case, Dr. Micklow

11

states that he formulated his opinions about alternative designs based on his review of photographs and patents depicting and describing alternative designs, and on his discussions with other individuals who have installed such designs in the field. Micklow Rep. at ¶ 5. Further, Dr. Micklow testified that the Sure Footing design "looks identical" to a design he created himself. Any insufficiency in Dr. Micklow's knowledge of these designs goes to the weight of his testimony, not its admissibility. *NutraSweet*, 227 F.3d at 789.

I thus turn to defendant's argument it is entitled to summary judgment even if Dr. Micklow's testimony is considered. Defendant again argues, as it did before Judge Rowland, that Dr. Micklow's opinions do not amount to competent evidence of a design defect under the risk-utility framework. In *Jablonski*, the Illinois Supreme Court distilled the risk-utility analysis into a non-exhaustive list of factors, which include:

> [E]vidence of (1) the availability and feasibility of alternate designs at the time of the product's manufacture; or (2) that the design used did not conform to the design standards in the industry, design guidelines provided by an authoritative voluntary organization, or design criteria set by legislation or governmental regulation. … Other factors that may be relevant include the utility of the product to the user and to the public as a whole, the safety aspects of the product including the likelihood that it will cause injury and the probable seriousness of the injury, and the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

12

955 N.E. 2d at 1154-55 (citations omitted). The *Jablonski* court explained that the relevant factors "may vary depending upon the unique facts and circumstances of each case," and that "the court must initially balance factors it finds relevant to determine if the case is a proper one to submit to a jury." *Id*. at 1155.

Defendant first contends that Dr. Micklow "admitted" he did not conduct a risk-utility analysis. But this argument is not supported by the record. The portion of Dr. Micklow's testimony on which defendant relies is:

> Q: Okay. I assume you haven't done any analysis of the relative risks of this product versus utility?
>
> A: For which product?
>
> Q: For the auto transport trailer with regard to fall protection.
>
> A. With a particular fall protection device? Correct. No, I have not.

Micklow Dep., Def.'s L.R. 56.1 Stmt., Exh. D at 241. On its face, however, Dr. Micklow's answer appears to confirm that he did not conduct a risk-utility analysis of a particular alternative design, not of the actual car hauler involved in plaintiff's accident.

Defendant next attacks Dr. Micklow's putative failure to consider the "cost" or "expense" of alternative designs. But an

13

expert is not required, under *Jablonski*, to discuss every possible factor in his risk-utility analysis, *see* 955 N.E. 2d at 1155, and in any event, as Judge Rowland noted, Dr. Micklow explained during his deposition that his opinions on this issue did take cost into account. Dr. Micklow testified that he believed the cost of one of the alternatives he identified to be "a fraction of 1 percent of the value [of the vehicle] to put it along the entire upper deck," and he began to explain—until being cut off by defendant's counsel—that the basis for this estimate was his belief that inexpensive, "chrome-moly tubing" could be used in the design. 12/19/2012 Micklow Dep., at 165:14-166:4 [DN 129-1].

Defendant also argues that Dr. Micklow's opinion that viable alternative designs existed "lacks support in the record," since his deposition testimony revealed that he could not say for certain whether the Sure Foot or Rail Grabber systems were commercially available at the time the allegedly defective car hauler was manufactured. But his opinion that feasible alternative designs existed does not require proof that any of these designs was commercially available, or even that they had been built. *See Baley v. Federal Signal Corp.*, 982 N.E. 2d 776, 796 (Ill. App. Ct. 2012) ("there is no requirement that the feasible alternative design actually be built.") Moreover, Dr. Micklow was not asked at his deposition about

other alternative designs mentioned in his report, such as the European design Dr. Micklow states he has seen in practice. Accordingly, Dr. Micklow's testimony about alternative designs is *prima facie* evidence of design defect, which plaintiff is entitled to present to a jury.

Finally, while defendant is correct that Judge Rowland failed to address its argument that Dr. Micklow should be barred for non-compliance with her February 12, 2013, Sanction Order[4] and other misconduct, these arguments do not entitle it to the relief it seeks. In its motion before Judge Rowland, defendant identified two putative violations of the Sanction Order. The first was that plaintiff's counsel tendered certain documents to the wrong attorney at defendant's counsel's firm, allegedly delaying defendant's receipt of the production. Even assuming that plaintiff's counsel should have known to send the documents to a different attorney, however, this error is not so egregious as to warrant the draconian sanction of precluding Dr. Micklow's testimony.

Second, defendant argued that Dr. Micklow failed to bring the "Ryder report" to his second deposition, which Dr. Micklow identified during his first deposition as containing accident statistics supporting his opinions in this case. Having

---

[4] I follow defendant's lead in referring to Judge Rowland's February 12, 2013 Report and Recommendations, which Judge Nordberg adopted on April 25, 2013, as her "Sanction Order."

15

thoroughly reviewed the record and the parties' submissions on this point, however, I am unable to conclude that Dr. Micklow violated the Sanction Order.

At the outset, it is unclear from the record whether the "Ryder report" refers to a single document, or, instead, to the "boxes and boxes of accident report data" from which Dr. Micklow culled and summarized accident statistics. While defendant (and occasionally Dr. Micklow himself) appears to refer to a particular document, Dr. Micklow's testimony suggests that the statistics informing his opinion are calculations that he compiled himself, based on the accident data. *See* 12/19/2012 Micklow Dep. at 190:13-15 (Q: I want to know where the statistics that you're referring to exist in those reports. A: Well, they give you a number of accidents, and then myself and Linda Wiesman compile the statistics.") [DN 129-1]. On its face, the Sanction Order appears to be directed to the latter: "Although he had a summary of those statistics, he did not have *the underlying ten boxes of accident reports, from which he compiled the statistics*." Sanction Order at 6 [DN 89] (emphasis added). The parties do not dispute that Dr. Micklow tendered these accident reports at his second deposition, albeit in a disorganized and unhelpful fashion. Accordingly, while defendant's frustration with Dr. Micklow's presentation of the

16

material is understandable, I am not persuaded that he violated the Sanction Order.

Moreover, as Judge Rowland explained in that Order,

> the absence of the documents that Plaintiff should have produced prior to Micklow's deposition had minimal impact on Cottrell's seven hour examination of Dr. Micklow. Defendant was able to fully explore Dr. Micklow's assessment of the car-carrier in this case, his work in related car carrier cases, his understanding of the processes of securing different types of cars to the carrier, his opinion regarding the need to lay (sic) down to secure a car to the over-cab position of the carrier, his opinion regarding the center of gravity shift precipitating Plaintiff's fall, various related safety standards, his interview with Mr. Hasan, and his billing rates, among other topics.

*Id*. at 8-9 (record citations omitted) [DN 89]. Observing that striking Dr. Micklow's testimony entirely would be tantamount to entering judgment in defendant's favor, Judge Rowland concluded that that sanction was not proportionate to the infraction. *Id*. at 9 (citing *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998) and *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996) (sanction must be one that informed and reasonable jurist would find proportionate to the infraction). I agree with Judge Rowland's assessment, and I conclude that even assuming Dr. Micklow's tender of an unwieldy confusion of accident report data at his second deposition failed to comply substantially with her Sanction Order, his

conduct likewise does not warrant precluding his testimony in its entirety.

Finally, defendant argued that Dr. Micklow should be barred for refusing to answer certain questions at his deposition on the ground that they related to his work on a different matter. In the portion of Dr. Micklow's deposition to which defendant pointed, Dr. Micklow explained that while inspecting car haulers at a truck stop, he performed some work relating to the present case and some work relating to another case. While Dr. Micklow answered questions about his work on this case, he refused to answer questions about his work on the other case, citing ethical concerns and the need to speak with the attorney on the other case before making any statements. 03/22/2013 Micklow Dep. 20-29.

While I agree that Dr. Micklow's refusal to answer these questions was without apparent legal justification, it is not clear that defendant suffered any prejudice as a result. To the extent defendant believes that any testimony plaintiff seeks to elicit from Dr. Micklow at trial relates to, or is based upon, matters Dr. Micklow has previously refused to discuss, defendant may raise those objections at trial.

III.

For the foregoing reasons, I accept Magistrate Judge Rowland's recommendation that defendant's motion for summary judgment or to bar Dr. Micklow be denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 21, 2014